UNITED STATES v. NATIONAL CITY BANK OF NEW YORK et al.

District Court, S. D. New York.
Aug. 7 and Sept. 25, 1946.

John F. X. McGohey, U. S. Atty., of New York City (Daniel M. Sandomire, of New York City, of counsel), for plaintiff.

Shearman, Sterling & Wright and Mc-Clellan & Shrewsbury, all of New York City (McIlburne Voorhies, of New York City, of counsel), for defendant.

CAFFEY, District Judge.

This is a motion by plaintiff for an order resetting my order of April 26, 1946, and for such other and further relief with respect thereto under Rule 37(b) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, or otherwise, as to the court may seem just and proper. The motion is based upon the contention that the Bank has refused to comply with that order.

That order required the Bank to produce for inspection the following records and documents of its head office in New York City, viz.:

(1) the file of the European District relating to its Russian branches beginning December 1, 1917;

(2) the file of the Foreign Department relating to its Russian branches beginning December 1, 1917; and

(3) the ledger accounts relating to its Russian branches beginning December 1, 1917,

limiting such examination and copying, however, to documents and entries which pertain to ruble transactions and counterparts thereof, commencing December 1, 1917, and until its Russian branches ceased operating and the files and ledger accounts cease containing documents and entries with reference to them.

Plaintiff claims that the Bank has refused full compliance with the order in that it has refused to produce the records specified in item (1) and has only partially complied with items (2) and (3). I will consider each claim separately.

As to item (1): The Bank's attorney admits that it has produced nothing, for he says that it has no file entitled "European District," and that that term was explained in his previous affidavit. He then said that the Bank had "no such thing as a file of its European District relating to its Russian branches"; that many officers at its head office had to do with its European business; that each officer kept in his own possession the files of documents relating to the particular transactions under his supervision; that, while current, these files were colloquially referred to as the files of the European District; and that when the transactions were no longer current, each officer sent part of his files to the storage warehouse. I used the term "European District" in my previous order, for it was the term used by both parties in the proposed orders which they submitted to me for signature.

Technically, the Bank has not failed to comply with my order. If it has no file under the designation "European District," it cannot produce it. In view of the facts which then appeared, plaintiff should have been more specific in the phraseology of its proposed order. It now suggests the substitution for the term "European District" of the phrase "the files relating to the Russian branches maintained by Mr. Fulton (the officer who seems to have had most supervision over those branches) and other head office officials who supervised the affairs of those branches, and including the file marked 'Petrograd' and any marked 'Moscow.'" This amplifies my previous order and is in accordance with my previous opinion; and I will, therefore, order them to be produced. Although the Bank's attorney now says that it made a search under the name of Fulton and under the names of other officers then in the European District, without success, it may find them upon further search. At least, it can find any file folders marked "Petrograd" or "Moscow."

As to item (2): Plaintiff's attorneys say that in producing the "Foreign Department" file, the Bank emasculated the record by withdrawing most of its contents and that its attorney declined to state the nature of the material withdrawn, or the basis of its selection, other than the com-

ment, "well, they had a copy of the order." Plaintiff's attorneys also say that the papers actually produced contained none of the reports from the officers in Russia which plaintiff has sought and none of the correspondence, cables and reports with the supervising officer in New York. Defendant did produce 36 file folders of correspondence with the Petrograd and Moscow branches.

In my previous order I limited the examination to documents pertaining to ruble transactions because only such documents were pertinent in connection with the Bank's defenses of ruble set-offs arising from its ruble deposits in the State Bank of Russia. Upon settlement of the order plaintiff objected to the use of this limiting language because it would be taken by the Bank as permitting it to edit the file before production and to withhold whatever it might deem did not pertain to ruble transactions. The Bank's attorney then replied that there was no file to edit, that it was a matter of searching for the papers which pertain to ruble transactions which would, otherwise, be an Augean task.

██ The Bank, however, now appears to have edited the file and to be unwilling to explain the basis of its editing. It was not my intention that the Bank should be the judge of what documents pertained to ruble transactions, especially in view of its assertion that there was nothing to edit. That was why I provided that the examination and copying, not the production, should be limited. Plaintiff is entitled to examine the complete files and to determine for itself what documents in them pertain to ruble transactions and to copy only those. Then, if there is any disagreement as to whether or not any particular document pertains to a ruble transaction, it may be submitted to me for decision.

As to item (3): Plaintiff's attorneys say that the Bank has produced only a part of the ledger accounts covering ruble transactions between the head office and its Russian branches, and that the statements of condition of the Russian branches, previously examined, show that there were other accounts, for they show certain accounts, and balances in each, as of December 30, 1917 (the titles and amounts of which are given), while the head office accounts which were produced show much different balances.

██ In his answering affidavit, the bank's attorney says that all ledger accounts pertaining to ruble transactions were produced, but he makes no reference to the particular accounts which plaintiff's attorney says were not produced. The statement that all ledger accounts were produced is a mere conclusion unsupported by any affidavit by any bank official.

The Bank must produce these specific accounts and any others which may appear from examination of these accounts to pertain to ruble transactions.

I will not now sign an order punishing the defendant, but will sign one embodying the foregoing conclusions, to be submitted on two days' notice. Defendant should be given an opportunity, before being punished, to comply with such order.

### Memorandum No. 2.

Items (1), (2) and (3) in the first paragraph of my order of April 26, 1946 will be resettled so that they will read as follows:

(1) The file or files of the European District (as such term has been used colloquially by defendant) relating to its Russian branches, beginning December 1, 1917, including in such production the complete contents of such file or files, and also the complete contents of the files maintained by Mr. Fulton and other head office officials who supervised the offices of those branches, and also the complete contents of the files marked "Petrograd" and "Moscow," and also including any papers which defendant may have heretofore removed from such file or files.

(2) The file or files of the Foreign Department relating to its Russian branches, beginning December 1, 1917, including in such production the complete contents of such file or files and any papers which defendant may have heretofore removed from such file or files.

(3) All ledger accounts relating to its Russian branches pertaining to ruble trans-

actions, beginning December 1, 1917, including the accounts entitled "Due to Head Office," "Due from Head Office," "Special Salary Account" and "Head Office Special Account," and the accounts shown as indicated by the statements of condition of the Russian branches previously examined by plaintiff and all other accounts which may appear from examination of the foregoing to relate to ruble transactions.

The following paragraph will be added at the end of the order:

If there should be any disagreement between the parties as to whether any particular paper or entry pertains to a ruble transaction, or to a counterpart thereof, the question may be submitted to me for decision by either party upon two days' notice to the other, and either party may apply at the foot of this order for any other relief that may be necessary to enforce the provisions of this order.

The date of such production will be inserted in the resettled order which plaintiff will prepare and submit on two days' notice to defendant, copying my order of April 26, 1946 with the foregoing modifications.